IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CALEB JAMES GRANT,

                         Plaintiff,

        v.                                                    OPINION and ORDER

DANIEL KROLIKOWSKI, STEVEN MESSNER,                          23-cv-551-jdp
ALEX BREUNIG, SAUK COUNTY, ERIK KNULL,
RICHARD MEISTER, and JOHN DOES 1–5,

                         Defendants.

---

Plaintiff Caleb J. Grant, proceeding without counsel, alleges that defendant members of the Sauk County Sheriff's department on two occasions unlawfully pulled over the car he was driving, searched him and arrested him without probable cause, and then subjected him to unconstitutional conditions of confinement at the Sauk County Jail. Each side moves for partial summary judgment, limited to the claims regarding Grant's arrest. Dkt. 101 (Grant's motion) and Dkt. 104 (defendants' motion). They have also submitted filings regarding discovery and identification of the "John Doe" defendants relevant to Grant's other set of claims, about unconstitutional conditions of confinement in jail.

The undisputed facts show that on both occasions Grant was driving a car that violated Wisconsin vehicle equipment regulations, so defendants did not violate the Fourth Amendment by pulling him over. Defendants' arrest of Grant and subsequent searches also did not violate the Constitution. So I will deny Grant's motion for partial summary judgment and grant defendant's partial summary judgment motion in all respects but one: I will have the parties submit supplemental briefing on Grant's Fourth Amendment malicious prosecution claim for being charged with obstruction for failing to identify himself during the second traffic

stop. I will also address the parties' discovery issues, including those related to identifying the John Doe defendants for Grant's conditions-of-confinement claims.

PRELIMINARY MATTERS

I previously directed the parties to provide each other with initial disclosures under Federal Rule of Civil Procedure 26(a)(1). Dkt. 114, at 7–8. Grant moves to compel defendants to provide those disclosures, stating that they did not provide them by the deadline set in my order. Dkt. 119. Defendants respond that they did provide Grant with their initial disclosures, although they inadvertently left out some documents and sent them to Grant within three days of the deadline, and they withheld internal policy manuals pending a protective order. (Defendants never followed up with a request for a protective order.) They add that Grant filed his motion to compel without attempting to confer with them first.

I will deny Grant's motion to compel. I agree with defendants that Grant needed to attempt to confer with them before filing his motion. And in any event it appears that defendants have disclosed to Grant almost everything that was required, with the possible exception of portions of the county's policy manuals. Grant has not been prejudiced by failing to receive those manuals; the traffic-stop and arrest-based claims that I am dismissing in this order do not hinge on anything on those documents. Should the manuals be relevant to Grant's remaining claims about his confinement, the parties should confer about the manuals.

Grant moved for an extension of time to file his materials opposing defendants' summary judgment motion, Dkt. 133, and he followed with those opposition materials. I will grant Grant's motion and I will consider his opposition materials.

I will now turn to the parties' cross-motions for partial summary judgment.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Caleb James Grant lives in Reedsburg, Wisconsin. During the events relevant to this case, defendants worked for the Sauk County Sheriff's Department. Richard Meister was the sheriff. Erik Knull was a patrol sergeant. Daniel Krolikowski, Steven Messner, and Alex Breunig were patrol deputies.

On the evening of April 6, 2023, defendant Messner was out on patrol when he heard excessive engine noise coming from a black Volkswagen Golf. The Golf did not have a visible exhaust pipe where one would be expected. Plaintiff Grant was driving the Golf, although Messner did not know the identity of the driver.

Messner concluded that the Golf violated Wisconsin Administrative Code § Trans. 305.20 ("Exhaust and air pollution control systems"). Messner followed the Golf to investigate the equipment violation. When following the Golf, Messner could see that it was missing an exhaust pipe. Messner turned on his red and blue emergency lights to alert the driver to pull over. Grant did not immediately pull over but he eventually pulled into a private driveway.

As he approached the car, Messner confirmed that it was missing an exhaust pipe. He told Grant that he pulled the car over for an equipment violation related to the noise produced by the car and lack of visible exhaust system. Messner asked Grant to show his driver's license and registration and identify himself; Grant refused. Messner told him that he could be arrested for obstructing.

Messner inspected underneath the vehicle; it appeared the entire exhaust system had been removed. Messner took a photo of the back of the car showing that at least the exhaust

pipe was missing. Dkt. 122-1, at 6. Defendants also state that the car didn't have a license

plate, but that is incorrect: photos taken by Messner show the license plate. *Id.* at 7, 8.

A search of online records on the squad car's computer identified the owners of the

vehicle as Joshua and Jennifer Grant.[1] The system included a picture of Joshua Grant (plaintiff

Grant's brother), which Messner thought matched the identity of the driver, so he issued a

citation to Joshua Grant for operating without a license and he issued Joshua Grant a written

warning for the equipment violation.

A few weeks later, a sheriff's lieutenant told Messner that an anonymous tipster told

the Baraboo Police Department that the person driving the Golf on April 6 was plaintiff Grant,

not Joshua Grant. Messner attempted to contact the tipster but was unsuccessful. Messner

contacted Joshua Grant, who told him that plaintiff Grant was the usual driver of the Golf, and

he gave him Grant's Reedsburg address. Messner drove to the address to speak with plaintiff

Grant, but he wasn't there. As part of his investigation, Messner spoke with other officers,

including defendant Krolikowski.

On the morning of May 18, 2023, defendant Krolikowski was out on patrol when he

saw a black Volkswagen Golf drive by with an exhaust pipe protruding about 10–12 inches

from the body of the car. Krolikowski believed that the protruding exhaust pipe violated

Wisconsin Administrative Code § Trans. 305.20 because unprotected exhaust pipes present a

burn hazard. Krolikowski followed the Golf and he radioed to dispatch and other officers that

he'd be making a traffic stop; he requested assistance from defendant Knull. Grant provides

audio of the sheriff's office dispatch in which Krolikowski states, "I'm behind a vehicle we're

---

[1] I will refer to other members of plaintiff Grant's family by their full names to avoid confusion
with plaintiff Grant, who I will refer to at times by his last name only.

attempting to locate," giving the license plate number for the Golf, and stating, "I'm going to attempt to traffic in a moment." Attachment to Dkt. 88, at 0:15–0:22.[2]

Krolikowski pulled the Golf over. Krolikowski spoke to the driver about equipment violation. Plaintiff Grant was the driver, although Krolikowski did not yet know that.

Grant provides audio of the stop, apparently from his cell phone.[3] Attachment to Dkt. 87. Krolikowski explained that the protruding exhaust pipe violated DOT regulations because it was unsafe and could burn someone. Grant argued that the exhaust pipe wasn't too long. Krolikowski asked Grant for identification. Grant questioned whether he needed to provide his license, he asked Krolikowski to show him what law he violated, and he continued to argue that the exhaust pipe was not a violation. Krolikowski attempted to explain why a protruding exhaust pipe could be dangerous. Grant stated that he was "traveling privately" and not commercially. *Id.* at 2:56. Krolikowski said that he still needed to follow the equipment laws. Grant asked Krolikowski whether Krolikowski was assuming he was a "Fourteenth Amendment citizen." *Id.* at 3:30. Defendant Knull arrived at the scene. Krolikowski asked Grant his name and he said he'd "rather not" provide it.

Krolikowski told Knull something that sounded like "Same situation." *Id.* at 4:12. Krolikowski and Knull then quickly asked Grant several times to step out of the car. Within a

---

[2] Defendants object to the audio and video footage that Grant submits in this case, stating that it wasn't been transcribed by a court reporter and thus is not proper evidence under this court's summary judgment procedures. But nothing in this court's summary judgment procedures requires that court reporter transcribe audio or video footage. *See* the attachment to the court's preliminary pretrial conference order, Dkt. 37. Defendants don't dispute Grant's authentication of the footage, which in one case is the sheriff's office's own dispatch audio. The footage is admissible.

[3] There are short bursts of video on the footage, but none of it is relevant to this case, and the screen is otherwise black for the vast majority of the footage.

few seconds of asking Grant to step out of the car Krolikowski brandished his baton and said, "Step out, or the window's breaking." *Id.*, at 4:17. Grant began to exit the car. Krolikowski asked whether Grant had any weapons in his car; Grant said he didn't think so. After Grant exited the car, defendants handcuffed him, and Grant stated that he might have a pocket knife in his left pocket. Defendants didn't find the knife there and then patted him down without recovering a knife.

The officers again asked Grant to identify himself and Grant asked why he was required to identify himself. Krolikowski and Knull told Grant that he was required to identify himself because was driving a vehicle with an equipment violation on a public road. They added that they were allowed to arrest Grant for obstructing them by refusing to identify himself.

Grant asked defendants what they meant by referring to a previous "situation"; they responded that they've had other incidents with people who refused to identify themselves, that the law requires someone violating the law to identify themselves, and that meant that they could arrest Grant for obstructing. They also stated that Wisconsin law requires a driver to have a license. They asked whether Grant had a license and he said he didn't. Grant continued to refuse to provide identification.

Another vehicle arrived at the location. A man and a woman exited the vehicle. Krolikowski placed Grant in the back of his squad car and radioed dispatch to provide the information of the second vehicle that had arrived. The individuals approached Krolikowski and Knull and began questioning them about the reason for Grant's stop. They then stated that the woman was the owner of the Golf and asked for it to be turned over to her. The woman produced a license identifying her as Jennifer Grant. Defendants were satisfied that Jennifer Grant was the registered owner and let her take the car.

Krolikowski and Knull took Grant to the Sauk County Jail to confirm his identity. Based on the car, the interaction with Jennifer Grant, and Krolikowski's previous discussion with defendant Messner, Krolikowski believed that the driver's identity was Caleb Grant. Krolikowski also knew that plaintiff Grant didn't have a valid driver's license. Krolikowski learned that Geoffrey Grant and Jennifer Grant were the names associated with the vehicle that arrived at the scene, and a DOT photo of Geoffrey Grant matched the man who arrived at the scene.

At the jail, a fingerprint scan didn't identify any results. During booking, Krolikowski examined Grant's wallet; it contained cards with the name "Caleb Grant" and his Reedsburg address. Krolikowski asked Grant if the wallet belonged to him, and he stated that the money inside the wallet was his, but he would not directly answer whether the wallet was his. Krolikowski also viewed a Facebook account that Joshua Grant had told officers belonged to Caleb Grant; it had pictures matching plaintiff Grant's appearance. Krolikowski was satisfied in confirming that the driver of the vehicle was Caleb Grant.

Grant was charged with obstruction, and was issued two traffic citations for operating without a valid license and two citations for the equipment violations related to his exhaust.[4] On June 12, 2024, a court trial was held on the four traffic citations and the criminal obstruction charge; the court found Grant guilty of all of the traffic citations. Following that, the obstruction charge was dismissed on the prosecutor's motion.

I will discuss additional facts as they become relevant to the analysis.

---

[4] The Wisconsin court system's electronic records show those cases as Sauk County Case Nos. 2023TR3072, 2023TR3073, 2023TR3074, 2023TR3075, and 2023CM237.

ANALYSIS

Grant contends that the defendant deputies "depriv[ed him] of his rights to liberty and freedom from unprovoked entrapment, unlawful arrest, denial of counsel, abuse of process and other violations of duly established laws protected by the 4th, 5th, 6th, 8th and 14th Amendments." Dkt. 130-1 (Grant's amended complaint), at 11–12. Grant's arguments are muddled by his apparent belief that the laws of Wisconsin don't apply to him: he states that he "is completely private and separate from the State of Wisconsin and has no franchise contract with it including but not limited to a drivers license." Dkt. 102, ¶ 57. I will not consider further any argument resembling long-discredited "sovereign citizen" theories of Wisconsin law's inapplicability to Grant.

Grant includes with his brief supporting his own motion for summary judgment a document listing the various ways in which he believes that defendants violated his rights, which helps to understand his claims. Dkt. 103-1. Otherwise his complaint and his briefing largely contain a mishmash of legal theories and references to constitutional amendments. That doesn't doom his claims because unrepresented plaintiffs are not required to plead legal theories. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). But it's unnecessary to consider each of the alleged deprivations under each constitutional provision; I'll frame his claims using the most relevant constitutional provisions and theories. The main thrust of his claims is that defendants didn't have a good reason to stop him on either April 6 and May 18, 2023, or to arrest him following the May 18 stop, so most of his claims boil down to whether defendants violated Grant's Fourth Amendment rights against unreasonable searches and seizures.

**A. Traffic stops**

The Fourth Amendment prohibits unreasonable searches and seizures. An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person, *see Carmichael v. Village of Palatine*, 605 F.3d 451, 456 (7th Cir. 2010). To stop Grant, defendants "must have had a reasonable articulable suspicion that [Grant] had committed, [was] committing, or [was] about to commit an offense. *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). Reasonableness requires an objective inquiry into all of the circumstances known to the officer at the time that he detained the suspect. *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011).

Driving without an exhaust pipe or with an unprotected exhaust pipe protruding past the body line of the vehicle violates Wisconsin law. Wisconsin Administrative Code § Trans 305.20 states in relevant part that "[e]very exhaust system located so as to be hazardous to a person outside the vehicle or to a person entering or leaving a vehicle shall be protected in order to prevent such person from being burned or otherwise injured" and that "[t]he tail pipe shall extend to the outside body line of the vehicle."

The deputies had reasonable suspicion to pull Grant over on each occasion. It's undisputed that on April 6, 2023, the Golf that Grant was driving was missing an exhaust pipe, and on May 18, 2023, the Golf had an exhaust pipe protruding at least ten inches from the body line of the car, causing a potential burn hazard.

Grant argues that his rights were violated by the officers relying on an anonymous tipster for the information that he was the driver of the Golf on April 6, and he accuses the deputies of "entrapping" him, by which I take him to mean that the deputies were actively looking for him after they incorrectly assessed his brother with the April 6 ticket. It's unclear

whether Krolikowski was actively looking for the Golf on May 18 or whether he just happened upon it, but either way, the Fourth Amendment doesn't prohibit officers from gathering information, including from anonymous sources, and it doesn't bar officers from attempting to track down someone to ticket them for a previous offense that they witnessed. So I will grant defendants' motion for summary judgment and I'll deny Grant's motion on this aspect of Grant's claims.

Next I'll consider the conduct of the deputies during the two traffic stops. I take Grant to be arguing that his Fourth Amendment rights were violated by the deputies asking him for identification. But officers are permitted to ask a driver for identification when making a lawful stop. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) ("Beyond determining whether to issue a traffic ticket, an officer's mission includes . . . checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."). And in Wisconsin, drivers are required to carry their driver's license and show it to a law enforcement officer when demanded. Wis. Stat. § 343.18(1). Grant didn't do this (it turns out he didn't have a valid license).

Grant states that defendant Messner took photographs of the scene during the April 6 stop, in violation of the county's policy manual. But the violation of an internal policy alone does not violate the Constitution. *See, e.g.*, *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017).

After Grant repeatedly refused to identify himself during the May 18 stop, defendants told Grant to exit the car, including by threatening to break his window unless he unlocked the door, But officers are entitled "as a matter of course" to direct motorists out of their vehicles during a lawful stop. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997). Krolikowski threatened

10

to break the window of the car only seconds after he first told Grant to step out of the car, but by that point Grant had already been uncooperative in providing a driver's license. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation omitted), and the same hold true for verbal conduct, *see Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001). No reasonable jury could conclude that Krolikowski unrealized verbal threat converted their reasonable seizure of Grant into an unreasonable one. *See id.* ("While it seems unlikely that harsh language alone would render a search or seizure 'unreasonable,' verbal abuse may be sufficient to tip the scales in a close case."). Defendants are entitled to summary judgment on each of these parts of the incidents.

## B. Arrest

Grant contends that defendants violated his Fourth Amendment rights on May 18, 2023, by arresting him, patting him for a weapon, and failing to give him *Miranda* rights.

Grant's arrest was reasonable if supported by probable cause. *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020). Probable cause exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Probable cause "requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056–57 (7th Cir. 2011).

Defendants say that they had probable cause to arrest Grant for obstructing an officer under Wis. Stat. § 946.41 by refusing to answer their questions about his identity; that statute

defines "obstructs" as "includ[ing] without limitation knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer in the performance of his or her duty." But Wisconsin courts have concluded that it is not obstruction to decline to answer an officer's request to identify oneself during a *Terry* stop akin to the traffic stop here. [5] *See Henes v. Morrissey*, 194 Wis. 2d 338, 354 (1995) ("We do not equate the failure to identify oneself with the act of giving false information."); *see also* Wis. JI—Criminal 1766 cmt. 3 (2024) ("In the Committee's judgment, a refusal to answer questions by itself should not be considered "obstructing an officer" in violation of § 946.41."); *State v. Woodring*, 1996 WL 653703, unpublished slip op., at *2 (Ct. App. 1996) (applying *Henes* to affirm dismissal of obstruction charge against persons who refused to identify themselves upon being cited for trespass).

Nonetheless, an arrest is reasonable under the Fourth Amendment so long as the information known to the officers at the time would have provided a hypothetical reasonable officer with probable cause to arrest Grant for *any* offense, even one unrelated to the one for which the arrest was actually made. *See Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010). And the offense doesn't need to be major to justify an arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). *Cf.* Wis. Stat. § 345.22 ("A person may be arrested without a warrant for the violation of a traffic regulation if the traffic officer has reasonable grounds to believe that the person is violating or has violated a traffic regulation.").

---

[5] *See Terry v. Ohio*, 392 U.S. 1 (1968).

Courts of this circuit have applied *Atwater* to include civil offenses such as unauthorized ticket sales, *Chortek v. City of Milwaukee*, 356 F.3d 740 (7th Cir. 2004); failing to carry a driver's license or proof of insurance, *Harris v. City of La Crosse*, No. 23-cv-62-jdp, 2024 WL 3823094, at *11 (W.D. Wis. Aug. 14, 2024); and first-offense intoxicated boating, *Koehl v. Blosenski*, No. 05-C-384, 2006 WL 416211, at *2–3 (E.D. Wis. Feb. 21, 2006). Here, defendants had probable cause that Grant was committing at least one of the following offenses: operating without a valid driver's license or with a suspended or revoked license, Wis. Stat. §§ 343.05(3)(a) and 343.44; or failing to carry or refusing to display his license upon demand, § 343.18(1). Therefore Grant's arrest didn't violate the Fourth Amendment. *See also Whatcott v. Luther*, No. 99-cv-264-bbc, 2000 WL 34230257, at *4 (W.D. Wis. Feb. 23, 2000) (rejecting Fourth Amendment challenge to arrest for violation of traffic law under Wis. Stat. § 345.22 ("A person may be arrested without a warrant for the violation of a traffic regulation if the traffic officer has reasonable grounds to believe that the person is violating or has violated a traffic regulation.")).

As for the pat search of Grant after he was handcuffed, if an officer has probable cause to arrest, he also may conduct a search incident to that lawful arrest without any additional justification. *United States v. Robinson*, 414 U.S. 218, 235 (1973). Searching a person incident to arrest "enables officers to safeguard evidence, and, most critically, to ensure their safety during 'the extended exposure which follows the taking of a suspect into custody and transporting him to the police station.'" *Virginia v. Moore*, 553 U.S. 164, 177 (2008) (quoting *Robinson*, 414 U.S. at 234–35). The pat search didn't violate the Fourth Amendment. Grant states that defendants violated county policy by failing to tell him that they were going to pat

13

him down before they did so, but even if that action violated the county policy it didn't violate the Constitution. *Estate of Simpson*, 863 F.3d at 746.

Grant contends that defendants violated his Fourth Amendment rights by failing to read him his *Miranda* rights. But the Supreme Court has ruled that officers' failure to comply with the requirements in *Miranda v. Arizona*, 384 U.S. 436 (1966), does not provide a basis for suing an officer for money damages. *See Vega v. Tekoh*, 597 U.S. 134, 138 (2022). I will grant defendants' motion for summary judgment and deny Grant's motion concerning his arrest and defendants' conduct during it.

**C.  Events at the jail**

Grant contends that his constitutional rights were violated by the booking process, where his fingerprints and photos were taken without his consent. But "the Fourth Amendment allows police to take certain routine administrative steps incident to arrest—i.e., ... book[ing], photograph[ing], and fingerprint[ing]." *Maryland v. King*, 569 U.S. 435, 461 (2013) (internal quotation omitted) (alterations in original). Also, it is undisputed that during booking, Krolikowski attempted to confirm Grant's identity by examining the contents of Grant's wallet. But an inventory search and seizure of the personal property of a person under lawful arrest, conducted as part of the routine administrative procedure at a police station, does not violate the Fourth Amendment. *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983).

Grant also states that defendants didn't let him make a phone call until after booking, in violation of his Sixth Amendment rights. But the Sixth Amendment right to counsel doesn't attach until the initiation of judicial criminal proceedings, *Kirby v. Illinois*, 406 U.S. 682, 689, (1972), and pretrial detainees have no freestanding Sixth Amendment right to use the phone,

14

*State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1145 (7th Cir. 1983). So I will grant summary judgment to defendants on this set of claims as well.[6]

## D. Malicious prosecution

Grant brings a final claim about the obstruction charge that he does not articulate well but is implicit in his allegations: a malicious prosecution claim that Krolikowski, Knull, Breunig, Sheriff Meister and Sauk County caused him to be charged with obstruction without probable cause.

The United States Supreme Court has recognized a Fourth Amendment claim for malicious prosecution when a defendant's actions cause the plaintiff to be seized without probable cause. *Thompson v. Clark*, 596 U.S. 36, 42 (2022). This is so even if there are accompanying valid charges supported by probable cause. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024). The elements of such a claim are "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution "terminated in the acquittal or discharge of the accused." *Thompson*, 596 U.S. at 44 (internal quotation omitted).

I take Grant to be saying that Krolikowski and Knull enforced a sheriff's office practice by arresting him for obstruction for his failure to identify himself. Defendants are adamant that Grant's failure to identify himself gave them probable cause to arrest him for obstruction. But as I stated regarding Grant's false arrest claims, Wisconsin courts have concluded that the

---

[6] Defendants also contend that they are entitled to qualified immunity on the various claims that I am dismissing. Because I am dismissing those claims on the merits, I need not consider defendants' qualified immunity arguments.

failure to identify oneself does not constitute obstruction. *See Henes*, 194 Wis. 2d at 354; *Woodring*, 1996 WL 653703 at *2. I previously dismissed Grant's arrest-related claims under *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978), against Sauk County because they were supported only by conclusory allegations that did not plausibly suggest that the alleged deprivations were actually caused by a policy or custom of the county, or that Sheriff Meister directed certain decisions. Dkt. 114, at 3. But in his amended complaint, Grant bolsters his allegations by adding that Sauk County deputies told him that "they do this all the time." Dkt. 130-1, ¶ 70. And at summary judgment he presents evidence that Krolikowski, Knull, and Messner all believed that they could arrest him for obstruction for refusing to provide his name, and implied that they had done so on previous occasions. Grant also amended his complaint to explicitly state that defendant Breunig signed the criminal complaint, showing his personal involvement in the malicious prosecution.

Defendants don't directly address this legal theory in their briefing, which is understandable given that there was no court order screening and framing the claims, Grant's filings are unfocused, and he honed that claim (particularly his allegations against the county and Breunig) in an amended complaint filed after the parties' cross-motions for partial summary judgment. So I can't tell whether there are disputes of fact that preclude either side from being granted summary judgment. I'll give defendants a chance to submit supplemental briefing and proposed findings of fact regarding Grant's malicious prosecution claims, and I'll give Grant a chance to respond with briefing, responses to defendants' proposed findings, and any additional proposed findings of fact that he wishes to submit. To head off additional battles over discovery, the parties should confer over defendants disclosing anything in the county's internal policy manuals related to training or policies on obstruction.

16

### E.  Conditions of confinement claims

Grant sues Sauk County, Sheriff Meister, and five unidentified "John Doe" defendants for subjecting him to unconstitutional conditions of confinement during his two-day stint there. In my previous opinion I stated that in cases involving John Doe defendants, this court routinely sets a schedule for specific discovery related to identifying those defendants and a deadline for the plaintiff to amend the complaint, but it did not do so here. Dkt. 151, at 5. Grant has made discovery requests about the staff working at the jail during the two days in question, but the parties disagree about the appropriateness of some of those requests and responses, and Grant seeks to compel responses to some of his requests. Dkt. 115.

So far, defendants have provided Grant with a list of employees working at the jail on each shift during the two days in question along with a job assignment for the day. Dkt. 152, at 4. Grant stated that he conferred with defendants about narrowing the list of employees to identify the John Does through the use of a photo array or job descriptions but that they have not yet responded. I had defendants respond to that contention, explaining what efforts they have taken to confer with Grant about narrowing the list of jail employees. Dkt. 151, at 5.

Defendants have responded, stating that they object to many aspects of Grant's requests as unduly burdensome and not proportional to the needs of the case, and that Grant is unwilling to compromise on his requests. I agree that Grant seeks information well beyond what is necessary, such as the home addresses and oaths of office for each employee and "[a]ll documents . . . pertain[ing] to ingress and egress from the Sauk County Jail facility." Dkt. 152 at 4–5. Defendants have already told Grant each employee's shifts, so he knows who was in the jail at various times. But if there is an entry log for the specific unit in which Grant was

17

housed, that would help whittle down specific times that staff entered or exited the unit, defendants should provide that to Grant. I'll direct them to do so.

Otherwise, the problem is that Grant can't identify the employees with whom he has unspecified specific interactions with regarding the conditions of confinement. Defendants ask that Grant narrow the pool of employees by providing them with "description[s] of Plaintiff's encounter with the officer, a general physical description, what the officer was doing at the time, approximate time and day of the encounter, and where Plaintiff interacted with the officer." *Id.* at 8. I conclude that this would be a productive way of narrowing the pool, so I will direct Grant to provide that information to defendants. After their deadline for these disclosures, the court will hold a telephone conference with Magistrate Judge Anita Marie Boor to assist the parties in taking the final steps to identify the John Doe defendants.

## ORDER

IT IS ORDERED that:

1. Plaintiff Caleb J. Grant's motion to compel, Dkt. 119, is DENIED.

2. Plaintiff's motion for extension of time, Dkt. 133, is GRANTED.

3. Plaintiff's motion for partial summary judgment, Dkt. 101, is DENIED in part.

4. Defendants' motion for partial summary judgment, Dkt. 104, is GRANTED in part.

5. Defendants may have until April 11, 2025, to submit supplemental summary judgment materials regarding plaintiff's malicious prosecution claims.

6. Plaintiff may have until May 12, 2025, to submit responses to defendants' supplemental summary judgment materials.

7. The parties may have until March 28, 2025, to respond to each other with John Doe-related discovery material as discussed in this opinion.

8. The clerk of court is directed to set a telephonic conference with Magistrate Judge Anita Marie Boor regarding the John Doe-related discovery, no earlier than April 4, 2025.

Entered March 17, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge