**Identification of the Two Parties**        EXHIBIT A

The transcript involves a conversation between:

1. **Caleb James Grant**: The pro se plaintiff, as indicated by the corrected name from "Kilgrant" (Transcript, 10.747–36.953) and context from your submissions (e.g., Grant's role in meet-and-confers, March 28 letter).
2. **Dalton Sjong**: Defense counsel for Defendants Deputy Daniel Krolikowski, Deputy Steven Messner, Deputy Alex Breunig, Sauk County, Deputy Erik Knull, and Sheriff Richard Meister, as confirmed by his introduction ("This is Dalton") and prior correspondence (e.g., March 28 letter addressed to Sjong at Crivello, Nichols & Hall, S.C.).

[10.747 --> 36.953] Hello, this is Dalton [Sjong]. Hey, Caleb Grant. Hey, how's it going? Oh, not too bad, yourself. Ah, not too bad. Give me one second, I'm putting it on speaker. Can you hear me? Yep. Perfect. So, do you want to start by explaining what you wanted to discuss? Actually, before we start, I've just sent you an email with a document that I hope you saw. You sent it?

[40.362 --> 64.713] Let me look at it real quick. Okay, does that pertain to your Dkt 170?

[65.152 --> 90.042] With regards to our supplemental identification that we provided, because that's what you're calling the meet and confer about, correct? The main component was your response to the order in Dkt 164 from the judge, right? Yeah, so we're talking about the same thing, and I just thought the document numbers are fairly well followed up. Here, let's see, we're calling—

[95.442 --> 120.738] Say that docket number again. I know your response was Dkt 170, and it was to the order of Dkt 164. Yeah, so we're talking about the same thing. Okay. I know you said, you know, the lack of information. What specifically, just for purposes of this, what specifically are we talking about? So there were two things—

[121.497 --> 144.346] So one was, you didn't provide headshots of the deputies you identified. I was wondering where those were at because they were in the order, as well as the job descriptions for those you identified. Sorry, the job descriptions, were those available online?

[144.886 --> 170.418] They're not online, but we got one directly from the client, Sauk County. They all had the same job. It's Deputy Sheriff-Jailor, and we're planning on providing that to you with respect to the headshots. The client called us and let us know that they do have headshots for our purposes because the—

[171.565 --> 192.254] photographs, and we're going to have those and we'll provide them subject to the protective order. I think I can explain that a little bit more, but it's pretty straightforward. We're providing personally identifiable information about people that aren't part of the lawsuit at this point.

[193.672 --> 222.477] It doesn't limit your ability to use the information in the lawsuit, other than just making sure these things aren't publicly filed and disseminated outside of the litigation. Okay. So you're asking for a protective order just so I don't use it in documenting stuff. Yeah. And the way the protective order is worded is if there's anything you submit to—

[223.237 --> 249.629] either party can identify it as confidential, and I can explain it in more detail if you have questions. But it's kind of just, goes both ways, basically. We give you these photographs, but you can't use them outside the litigation, send them to other people.

[249.967 --> 267.263] If we find something that, you know, the photographs, for some reason, have to be filed, it'll have to be under seal so they're not public records, things like that. Okay, I see what you're talking about. I'll have to go over and look over what you sent me. Yeah, I can't respond to that at the moment.

[268.985 --> 295.546] So, kind of getting ahead of it, that's probably what you're looking for. Yeah. So, it'll be… not because you will, but the first document, there's a stipulation and then there's an order. The stipulation is just if we agree to it, we put it before the court, it's stipulated, and the order will be entered. If you don't agree to it, we'll probably just file our own—

[295.546 --> 322.377] motion, but either way, you know, kind of the same outcome. Essentially, if we follow the stipulation, I think it's more likely that it'll be entered quicker, and we can just get that stuff to you. Okay. I'll have to look over what you sent. Another question is, I'm just curious why, if the safety concern you're talking about is an issue, why was that not—

[322.732 --> 347.572] brought up in your response? You didn't mention anything in Dkt 170 about headshots or job descriptions or any safety concerns involving that.

[347.909 --> 373.407] The information we identified was based on descriptions. You identify these individuals, we went back and forth, they contacted us after. Well, we got in contact with the guy up north, found out that there were headshots available.

[374.133 --> 402.938] It might have been a communication issue because we talked to two separate people with the county. I'm assuming one may not have been aware that the headshots were available because they're not readily available to the public. So that's why we're supplementing. Okay. Would you be willing to agree to an extension of time then for my amendment of the complaint? As this is kind of, you know—

[403.343 --> 427.576] taking up part of my time that I need to amend my complaint with all this extra. I mean, I have to look at what your current deadline is and how much time you're asking. Well, I was given 45 days at the conference with the magistrate, and now this is all taking my 45-day time because

now I'm waiting for this extra information that was not provided.

[429.871 --> 459.841] I wouldn't have an issue giving you whatever it was from the date that our… I'll have to… we've got to confer with the other attorneys on the case. I mean… Yeah. I don't really see an issue, but at the same time, I don't want to agree to anything right here, especially without having… like you said, you want to look over the—

[460.837 --> 490.081] protective order. I mean, it doesn't seem like that would be an issue. Like, what ours is doing in the 19th, but if we supplement through the photographs, whatever the equivalent extension of time is, I mean, I'm not agreeing to anything right now, but that would seem, you know, that's true. Yeah, that seems reasonable. Do you think you could have that answer by tomorrow sometime? If we have an answer on the protective order—

[490.435 --> 513.065] we'll know the extension time. Yeah, I'm saying, like, usually, you know, if you're like, yeah, fine with it, like you agree to the protective order, then sure, that extension plan. Alright. That isn't, you know, like an agreement, but I'll have an answer for you. Okay.

[516.743 --> 544.672] Alright, well, so, okay, so you… This is something where I want to, you know, get into the nitty-gritty. Yeah, yeah, that's fair. I mean, it's an issue, right? Yep. So then that pertains to the headshot pictures, and then you said you're going to send over the job descriptions. Yeah, all subject to the protective order. We'll make them uniform and send it all out once for the supplementary responses. Okay.

[546.207 --> 571.418] So, if you get a chance to look at the protective order documents and just shoot me an email, let me know if you're agreeable to it or not. I'll literally, once we get off the phone, I'll go talk to the higher-ups, the powers that be, and let them know what we discussed, and I'll have an answer for you too. Okay, no worries. I will look over this as well.

[574.81 --> 579.67] That was good. You have a good one. Alright. Have a good one. Bye.