**UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WISCONSIN**
**Case No. 3:23-cv-00551-jdp**

CALEB JAMES GRANT,

> Plaintiff,

v.

DYLAN HORN, MICHAEL PAPARA, BRUCE BAILEY, MICHAEL PAPARA, MICHELLE STRONG, DYLAN HORN, JEAN BONHAM, and SAUK COUNTY,

> Defendants.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF ORIGINAL JAIL VIDEOS AND FOR SANCTIONS**

Plaintiff Caleb James Grant, appearing pro se, submits this Brief in Support of his Motion to Compel.

# I. INTRODUCTION

Defendants have engaged in a pattern of delay, alteration, and improper discovery conduct that has severely prejudiced Plaintiff's ability to substantiate his claims regarding the conditions of his detention and the conduct of the individual Does. They withheld relevant jail video evidence for nearly three years and, when they finally produced it, did so in heavily redacted and edited form without explanation. Additionally, Defendants have failed to properly address representation of the six identified Does after Attorney Sjong left the firm, leaving those defendants without counsel of record and failed to update the court over a substantial amount of time until present. This conduct has impaired Plaintiff's ability to effectively litigate his remaining claims against the Does.

# II. PROCEDURAL BACKGROUND

On March 8, 2024, Plaintiff filed a **Notice for Production of Documents in a Specified Electronic Format** (Dkt. 43), specifically requesting that Defendants produce jail video recordings in their native electronic format.

On April 10, 2024, Plaintiff sent Defendants a formal written notice demanding preservation of all documents and electronically stored information, including computer files, in connection with this case.

On April 22, 2026, Plaintiff served Requests for Production that included:

- **RFP No. 1**: All video recordings from Sauk County Jail cameras showing Plaintiff on May 18–

19, 2023.

- **RFP No. 2**: The complete chain-of-custody for those videos.

On May 23, 2026, Defendants identified nine jail videos but did not produce them. Plaintiff sent Meet-and-Confer letters on June 1, 2026 and June 15, 2026. On June 11, 2026, Defendants finally produced the videos — nearly three years after they were created on September 25, 2023 — but in heavily altered form.

On January 14, 2025, this Court issued an Order (Dkt. 151) requiring Defendants to respond regarding their efforts to identify the John Doe defendants. Although the Does have since been identified, the videos remain highly relevant to confirming the specific conduct and conditions Plaintiff experienced during his detention.

On June 16, 2026, Defendants filed a Notice of Withdrawal and Substitution of Counsel (Dkt. 232/233), substituting Samuel C. Hall, Jr., Sara C. Mills, and Nathaniel J. Cullen as counsel for the six Does. This substitution occurred only after Plaintiff sent a Meet-and-Confer letter demanding clarification on representation.

## III. FACTUAL BACKGROUND

### A. Deficient and Altered Video Production

Although the videos were due on or about May 22, 2026, Defendants failed to produce them until June 11, 2026 — and only after Plaintiff was forced to send Meet-and-Confer letters. The files were altered as recently as June 2, 2026, just days before production. This pattern of missing the deadline, making last-minute alterations, and only producing after being compelled demonstrates bad faith and a deliberate effort to delay and control the evidence.

The videos produced on June 11, 2026 suffer from multiple serious deficiencies that have impaired Plaintiff's ability to use them effectively to substantiate his claims:

- The videos contain extensive redactions and edits, including footage that was **sped up when clear movement is in progress** and sections that appear to have been removed.
- The metadata shows a **Modified date of June 2, 2026** and lists **"VideoProc Converter AI"** under Contributing Artists. A visible "VideoProc Converter AI" watermark also appears at the end of some videos.

- Plaintiff computed the SHA-256 hashes of the received video files using **Visual-Hash**, a free and publicly available hashing program. These hashes do not match the SHA-256 hashes listed in Defendants' production documentation.
- Different SHA-256 hash values prove that the video files produced to Plaintiff are not identical to the original recordings. Without knowing the nature and extent of the alterations, these files cannot be trusted as accurate evidence.
- The Chain of Custody report only reflects Sheriff's Office personnel and does not include Crivello, Nichols & Hall, S.C.
- No redaction or editing log was provided.

Additionally, Defendants made an **additional, unnecessary alteration** to the video files by adding a "CONFIDENTIAL" watermark. This alteration further changed the hash values of the files and has the effect of obscuring Plaintiff's ability to determine the full extent of other modifications made to the original recordings. Defendants did not disclose this additional alteration. This conduct further demonstrates a lack of candor and transparency.

Additionally, the produced video files contain **no audio track or audio-related metadata**. Plaintiff's original Requests for Production specifically requested video recordings "including audio, if any." While it is not certain whether the original recordings contained audio, there are also no assurances from Defendants that any audio present on the original files was preserved. If audio existed, its removal during the editing and conversion process would constitute a further material alteration of the evidence that was not disclosed to Plaintiff.

The edits appear **selective and targeted** toward obscuring specific events and conditions Plaintiff has identified as problematic, such as the placement and accessibility of toilet paper and the identity and timing of individuals at cell doors. There is **no consistent or logical pattern** to the speed adjustments that would support Defendants' stated justification of protecting institutional layout, doors, or security features. This further indicates that the alterations were not made for legitimate security reasons but rather to impair Plaintiff's ability to use the evidence.

**Speeding Up During Action, Not Just Inactivity**

Much of the speeding up of the video in these files is not consistent with any explanation that it was done only during periods of inactivity (such as when someone is sleeping or still). In many instances, the video is sped up **while action is occurring** on screen. This directly contradicts any claim that the

speeding was applied neutrally or only when there was no motion. The selective and targeted nature of these edits further supports the conclusion that they were made to impair Plaintiff's ability to use the evidence rather than for any legitimate operational or security purpose.

**Example of Internal Editing Within a Single File**

One of the produced videos (file 20230925_01_01_10_1.mp4) provides a clear example of internal editing. This approximately 4-minute-54-second video (time-stamped from 8:11:05 to 8:15:59 on May 18, 2023) contains multiple unexplained gaps in the recorded timeline:

- At approximately 0:14 into the video, the on-screen timestamp jumps from 8:11:18 to 8:11:37 ($\approx$19-second gap).
- At approximately 0:57 into the video, the timestamp jumps from 8:12:19 to 8:13:35 ($\approx$76-second gap).
- At approximately 1:52 into the video, the timestamp jumps from 8:14:32 to 8:15:50 ($\approx$78-second gap).

These gaps total approximately **2 minutes and 53 seconds** of missing footage within a video that was only about 4 minutes and 54 seconds long. The presence of multiple internal timestamp discontinuities in a single short video demonstrates that the produced files were actively edited, not merely redacted for legitimate security purposes at the beginning or end of recordings.

These facts demonstrate that the videos were materially altered on or around June 2, 2026, while in Defendants' possession or control. As a result, Plaintiff has been deprived of the original, unaltered evidence he requested and is entitled to receive in order to substantiate his claims regarding the conditions of his detention and the conduct of the individual Does.

**B. Violations of the Protective Order (Dkt. 214)**

Defendants' production also violates the Protective Order entered in this case (Dkt. 214). While the Protective Order permits a party to designate materials as "Confidential," it does not authorize the producing party to unilaterally alter, edit, or manipulate evidence before production. Defendants produced videos that were run through conversion software (VideoProc Converter AI), sped up in sections, and partially removed — all without providing any log, explanation, or justification. This lack of transparency prevents Plaintiff from evaluating the basis for the redactions or the "Confidential" designation and directly contravenes the purpose and requirements of the Protective Order.

Moreover, Defendants stated that the basis for the "Confidential" designation was institutional safety and security, claiming the recordings depict interior layout, locations of doors and security features, and movement patterns. However, the edits actually performed — particularly speeding up footage and removing sections — do not address or protect those stated concerns. This mismatch between the stated justification and the actual alterations made further demonstrates that the edits were not made for legitimate security reasons.

Defendants' stated justification for designating the videos as "Confidential" is also inconsistent with their prior productions in this case. Defendants have already produced — without any protective order — shift schedules and rounds sheets that include the times of rounds, initials of jailers, and observations of inmates. This prior production of timing and movement information directly undercuts their claim that the videos must be protected to safeguard institutional layout, doors, security features, and movement patterns. The selective application of the "Confidential" designation to the videos, while freely disclosing similar information in other forms, further demonstrates that the designation was not made in good faith or for legitimate security reasons.

## C. Late Production and Failure to Timely Supplement

The videos were created on September 25, 2023. Despite Plaintiff having previously sought production of documents in a specified electronic format (Dkt. 115) and the Court's Order in Dkt. 151 requiring Defendants to address identification-related discovery, Defendants failed to produce the videos until June 11, 2026 — nearly three years later and only after Plaintiff was forced to send a Meet-and-Confer letter. This constitutes a failure to timely supplement under FRCP 26(e) and has prejudiced Plaintiff's ability to substantiate his claims against the Does.

## D. Prolonged Failure to Address Representation of the Does and Resulting Prejudice

The departure of Attorney Sjong without any notice of withdrawal, substitution of counsel, or supplementation under FRCP 26(e) left Plaintiff without any clear attorney of record for the six identified Does for a significant period of time. Because no other attorney from Crivello, Nichols & Hall, S.C. ever filed an appearance specifically for the Does, and because Defendant Cullen's Notice of Appearance (Dkt. 231) excluded them, Plaintiff was left uncertain about who (if anyone) was authorized to respond to discovery or otherwise act on behalf of the Does. This lack of clarity impaired Plaintiff's ability to efficiently conduct discovery targeted at the Does, follow up on responses, and prepare his remaining claims against those specific defendants. This prejudice was compounded by the

fact that identification and litigation of the claims against the Does remained an active and ongoing issue in the case, as recognized by the Court in Dkt. 151 and Dkt. 219.

Additionally, there was never any supplementation under FRCP 26(e) notifying Plaintiff or the Court when Attorney Sjong left the firm. Plaintiff can affirm that as of **February 2026**, Sjong stopped responding to communications regarding the Does and other matters he had been handling. Despite this, Defendants took no steps to notify Plaintiff or the Court or to substitute new counsel for the Does until after Plaintiff sent a Meet-and-Confer letter on June 15, 2026. This prolonged failure to supplement or address the representation gap caused real prejudice to Plaintiff, who was left without any clear point of contact or responsible attorney for the Does for several months while attempting to litigate his claims against them.

Although Defendants filed a substitution of counsel on June 16, 2026 (Dkt. 232/233), the prolonged period during which the Does had no counsel of record caused real prejudice. Plaintiff was forced to litigate without a clear point of contact for the Does, which impaired his ability to efficiently conduct discovery and prepare his claims against them. This delay and lack of supplementation under FRCP 26(e) is part of Defendants' broader pattern of discovery abuse.

## IV. LEGAL ARGUMENT

Defendants' conduct violates FRCP 26(e) (duty to supplement), FRCP 34 (production of documents), and the Protective Order (Dkt. 214). Their pattern of late and altered video production, combined with the prolonged failure to properly address representation of the Does and their deficient responses to discovery, constitutes discovery abuse warranting both compelled production and sanctions under FRCP 37.

In his June 17, 2026 response to Plaintiff's Meet-and-Confer letter, Defendant Cullen addressed the representation issue but failed to cure or even meaningfully respond to several critical deficiencies, including the lack of a redaction/editing log, the hash mismatch and VideoProc Converter AI metadata showing recent alteration of the files, the absence of any audio, and the incomplete chain of custody. This evasive response further demonstrates a lack of good faith in the discovery process.

Plaintiff has made good-faith efforts to resolve these issues through written Meet-and-Confer letters dated June 1, 2026 and June 15, 2026. Defendants have failed to adequately respond.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order:

**1.** Compelling Defendants to immediately produce the **original, unedited versions** of the nine jail videos;

**2.** Requiring the newly substituted counsel to confirm, in writing, that they will stand behind prior discovery responses served on behalf of the Does;

**3.** Ordering Defendants to either remove the "Confidential" designation from the original, unedited videos;

**4.** Ordering Defendants to conduct a thorough search for and produce any additional video recordings from May 19, 2023, including but not limited to:

- Body-worn camera footage or other internal recordings from the property/money return window during Plaintiff's release process (Encounter 10); and
- Any holding cell or cell block video footage of Plaintiff from:
  - Approximately 12:00 midnight to 7:37 AM on May 19, 2023; and
  - Approximately 7:46 AM to 3:26 PM on May 19, 2023;

**5.** Imposing sanctions on Defendants for their pattern of discovery abuse and spoliation, including but not limited to: (a) an adverse inference that the altered, missing, and withheld evidence would have been unfavorable to Defendants; (b) an order extending Plaintiff's deadlines to respond to any dispositive motions until he has had a reasonable opportunity to review the original, unedited videos; ando, 60 days (c) such other sanctions as the Court deems appropriate;

**6.** Ordering Defendants to identify, in writing, every person (including any attorney, paralegal, staff member, or third-party vendor) who performed, directed, authorized, or supervised any alteration, editing, re-encoding, redaction, or modification of the video files produced on June 11, 2026, including but not limited to the use of VideoProc Converter AI, the removal of sections, the speeding up of footage, and the addition of the "CONFIDENTIAL" watermark; and

**7.** Granting such other and further relief as the Court deems just and proper.

Dated this 22nd day of June, 2026.
Respectfully submitted,

**/s/ Caleb James Grant**

Caleb James Grant, Plaintiff, Pro Se
**C/o E 7973 Beth Rd**
Reedsburg, WI 53959
(608) 386-3467
CJGAgent@protonmail.com