IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CALEB JAMES GRANT,

                    Plaintiff,

            v.

DEPUTY DANIEL KROLIKOWSKI, *et al.*,

                    Defendants.

OPINION and ORDER

23-cv-551-jdp

---

Plaintiff Caleb J. Grant, representing himself, is proceeding against defendant members of the Sauk County Sheriff's Department on claims of unconstitutional conditions of confinement. He alleges that he was held in a holding cell for two days at the Sauk County Jail in 2023 where he suffered cold temperatures, staff questioning, "chiding and belittling," and lack of privacy and sleep due to noise and bright lights. Dkt. 130-1 at ¶ 51. He also alleges that he was denied nutritious food and access to counsel and a phone. *Id.*

This order addresses plaintiff's latest discovery motions. For one, he seeks clarity on who is representing the newly named defendants and to compel production of unedited copies of nine jail videos. Dkt. 234. For another, he seeks to compel supplemental responses to requests for admissions and interrogatories. Dkt. 239. He also seeks to compel defendants Krolikowski, Knull, and Sauk County to respond to discovery requests concerning his arrest, transport, booking, intake, and confinement at the Sauk County Jail. Dkt. 249. Finally, he seeks sanctions against defendants for their alleged "pattern of delay, alteration, and improper discovery conduct." Dkt. 235 at 1. For the following reasons, the court GRANTS in part each of plaintiff's motions and declines to impose sanctions.

ANALYSIS

**A.  Clarification regarding the newly named defendants, Dkt. 234**

Plaintiff identified the six Doe defendants in September 2025.  Dkt. 218.  Attorney Dalton J. Sjong entered an appearance for the newly named defendants on behalf of law firm Crivello, Nichols & Hall, S.C., Dkt. 222, and left the firm in February 2026.  A notice of attorney withdrawal and substitution was filed about four months later, on June 16, 2026, indicating that Attorneys Samuel C. Hall, Jr., Sara C. Mills and Nathanial J. Cullen of Crivello were substituting for Attorney Sjong as counsel of record.  Dkt. 233.  In the interim, plaintiff had emailed Attorney Sjong discovery requests on March 9, 2026, and defendants responded on May 23, 2026 via Attorney Cullen.  Dkt. 242-7.

Plaintiff complains of prejudice from the four-month delay in clarifying which lawyer at Crivello represents these defendants.  He seeks to clarify who represents these defendants, and states that he had no notice of Attorney Sjong's departure.  To be sure, a timelier notice of withdrawal should have been filed in an effort to avoid confusion and delay, but the attorneys representing these defendants are now formally established.  And plaintiff received discovery responses, albeit from a different attorney at the same firm, with sufficient time to review them before the dispositive motion deadline.[1]  He has not established that the delay was prejudicial.

Plaintiff also asks "newly substituted counsel to confirm, in writing, that they will stand behind prior discovery responses served on behalf of" these defendants.  Dkt. 235 at 7.  That is unnecessary.  Defendants have submitted their sworn responses and may be held to them.

---

[1] At the time plaintiff received responses on May 23, 2026, the dispositive motion deadline was July 2, 2026.  Dkt. 230.  It is now August 7, 2026.  Dkt. 238.

They must supplement them as necessary regardless of who represents them, *see* Federal Rule of Civil Procedure 26(e), and inconsistencies risk undermining their arguments at summary judgment or credibility at trial.

### B. Motion to compel unedited copies of jail video, Dkt. 234

The focus of this case is on plaintiff's alleged experience as a detainee in the Sauk County Jail on May 18 and 19, 2023. In response to plaintiff's April 2026 requests for production, defendants produced nine jail videos of his detention. Plaintiff claims they are "heavily altered" based on his observation that portions have been "sped up when clear movement is in progress" or appear to be missing. Dkt. 235 at 2. He also notes that there is no audio track and a "Confidential" watermark is on the videos as well as a watermark for "VideoProc Converter AI" that appears at the end of the some of the videos. Plaintiff suggests that the videos are not "accurate evidence" because the SHA-256 hashes[2] he has computed for himself are different from those defendants list in their production documentation. *Id.* at 3.

Defendants attest that they have produced all relevant videos from the Sauk County Jail that were saved and uploaded to its digital evidence management system called iCrimeFighter, and have also searched for any videos that were saved but not uploaded to that system.[3] They confirm that the video recording system used by the Sauk County Jail does not record audio and attribute any jumps or skips in the video footage to the fact that the system

---

[2] SHA-256 is a cryptographic algorithm that generates a fixed-length 256-bit hash value from input data that is commonly used to ensure data integrity.

[3] The jail's system stores video for 120 days before it is overwritten. Chief Deputy Eric Van Den Heuvel attests that he asked the jail captain to save all videos of plaintiff during his time in custody when he became aware of this lawsuit in August 2023, and that all videos that had not yet been overwritten were added to iCrimeFighter on September 25, 2023. Dkt. 243, ¶¶, 5, 7.

stops recording when no motion is detected.  Defendants acknowledge that while not all video of plaintiff's detention was saved, they argue that plaintiff is not prejudiced because "critical" video was produced, including video of plaintiff's entire time in a cell on May 18, 2023 and his being escorted to the jail exit.  Dkt. 241 at 10.  Moreover, defendants admit that receiving cell lights are on 24 hours a day, as suggested in the existing videos.

As for the watermarks, defendants have submitted the declaration of a system administrator for Crivello, Peter Thompson.  Dkt. 247.  He attests that he made no edits or redactions to the video files.  He attests that he made copies of the original files and then used VideoProc Converter AI software to add a watermark to the copies that reads "Confidential" and includes the case number.  Thompson explains that in doing so, the software re-encoded and thus created a new video file with the watermark.[4]

Plaintiff seeks production of the unedited videos, but the court will not order further production at this time.  To the extent that there was a delay in production of the videos once plaintiff's request for production was received, plaintiff received the videos in time to review them well before the dispositive motion deadline and to seek court intervention, so there is no

---

[4] Defendants referenced and relied on Thompson's declaration in their brief in response to plaintiff's motions to compel and for sanctions, *see* Dkt. 241 at 5 & 11, but omitted the declaration from the documents filed with the response.  The declaration was filed four days later with a letter explaining its omission as inadvertent.  Dkt. 246.  In light of this brief delay, and because defendants reference it in their timely filed materials and were thus not trying to hide it, the court accepts the declaration.  Plaintiff objects to its consideration, stating that no "hash values (e.g., SHA-256) were provided to verify that the produced files match the originals" so he cannot verify the "integrity" of the videos he received.  Dkt. 248.  That is not a reason to disregard Thompson's declaration about how he treated the files, and defendants have offered plaintiff the opportunity to view the original videos without watermarks for himself.  Dkt. 242-14; *see* Fed. R. Civ. P. 34(b)(2)(B) (allowing a responding party to permit inspection *or* produce copies).  At bottom, as explained below, plaintiff's concerns about the integrity and authenticity, and thus admissibility, of the evidence produced are more appropriately raised at summary judgment or at trial.

prejudice. Defendants have offered a plausible explanation for the anomalies plaintiff has observed, and a still image from one of the jail videos with the watermark confirms it does not obscure the image to a prejudicial degree. Dkt. 242-16. Defendants have also offered plaintiff the opportunity to review the original videos without the watermark for himself, which he has so far declined. *See* Fed. R. Civ. P. 34(b)(2)(B) (allowing a responding party to permit inspection *or* produce copies). Regardless, whether the videos are authentic and reliable evidence is not so much a question of production as it is of admissibility. Plaintiff may raise these points at summary judgment or trial, along with his arguments about what he believes the videos show.[5]

That said, in light of defendants' acknowledgment that not all videos were saved, the court will order defendants to do a final search for any additional video evidence and confirm their findings to plaintiff in a verified response. If plaintiff believes that defendants have withheld or destroyed any evidence in bad faith, he may move for spoliation sanctions for the presiding judge's consideration. Should plaintiff decide to do so, he will have to meet the high burden of showing that defendants destroyed the evidence on purpose to hide adverse information. *See Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the [evidence was] destroyed but that [it was] destroyed for the purpose of hiding adverse information.").

---

[5] Plaintiff should review the court's preliminary pretrial packet attached to the preliminary pretrial conference order for guidance on how to properly make these objections in summary judgment filings. *See* Dkt. 37.

### C. Plaintiff's motion to compel supplemental responses, Dkt. 239

Plaintiff also seeks to compel defendants Bailey, Horn, Papara, Schneider, Strong, and Bonham to supplement their responses to his April 23, 2026 requests for admissions and interrogatories. *See* Dkt. 239-1 & Dkt. 239-2. He argues generally that the responses are mere boilerplate objections or statements that defendants "lack sufficient information or knowledge to admit or deny" rather than "specific, factual answers" that reflect their direct involvement in alleged events. Dkt. 239 at 1.

The parties have been warned to "avoid hypertechnical objections to each other's filings," Dkt. 151 at 3, but plaintiff's grievance is generalized, and the court will not divert itself from its role as a neutral decisionmaker by trying try to guess which specific discovery requests he seeks to challenge as insufficient among those he attached. That said, the court will order defendants to review their responses for possible supplementation with the following guidance and observations for both sides in mind.

First, some of defendant's objections are reasonable, even if they appear to be repeated boilerplate. It is reasonable that defendants may not have clear memory of every aspect of plaintiff's two-day detention years after the fact. For example, a defendant honestly may no longer recall and may be unable to otherwise investigate the "exact words" plaintiff used in a given situation, *see* Dkt. 239-2 at 3 & 5, a specific, undocumented conversation with plaintiff, or which other defendants may have been present. And some of the requests ask defendants for information for which they would have no personal knowledge, such as plaintiff's request to admit that he "experienced difficulty sleeping" due to bright lighting. *See., e.g.*, Dkt. 239-1 at 47. While jail staff defendants may know whether lights were always on while plaintiff was detained, defendants cannot speak to how well plaintiff slept or why.

Second, plaintiff must look across all the responses for information and consider whether, taken as a whole, he has the information he needs to prosecute his case. While one defendant, for example, may not recall where the toilet paper was kept in plaintiff's cell or when he was given a drinking cup, *see* Dkt. 239-1 at 48, another admits that "the toilet paper is located in a cubby hole and cannot be seen when looking to the side of the toilet fixture" and that plaintiff was not provided a drinking cup until after he was booked in. *Id.* at 3 & 36–37. As another example, one defendant may not recall whether plaintiff was given a debit card or voucher that he signed for in exchange for his cash, *see Id.* at 50, while another admits to releasing plaintiff's money "from lockdown on a credit card that has terms and conditions attached to it," *Id.* at 32. Multiple defendants may not all recall the same incidents, but plaintiff is not reliant solely on the evidence defendants produce to create genuine issues of material fact and survive summary judgment or to prove his claims at trial. He has his own memory of events, and thus his own evidence to submit to support his version of events.

Third, there are some responses that the court would expect defendants to be able to answer more fully with some diligence. Parties have an obligation to undertake a reasonable inquiry that includes looking for facts and documents in good faith rather than just guessing. *See* Fed. R. Civ. P. 26(g) (requiring an attorney or party to certify they made a reasonable inquiry). For example, a defendant jail staffer should, with reasonable diligence, be able to determine what kind of cell plaintiff was held in. *See* Dkt. 239-1 at 35 (defendant "lacks sufficient information or knowledge to admit or deny the type of cell").

In light of these points, the court will not order supplementation of any specific response, but it will order defendants to review their responses with an eye to possible supplementation. As noted above, it behooves a party to ensure their responses are timely

supplemented to be as complete and accurate as possible to avoid adverse consequences at summary judgment or trial.

### D. Plaintiff's motion to compel responses to his March 9, 2023 discovery requests, Dkt. 249

Plaintiff seeks to compel defendants Krolikowski, Knull and Sauk County to respond to his March 9, 2023 discovery requests, which relate to their involvement in plaintiff's traffic stops, arrest and booking. *See* Dkt. 249-3 to Dkt. 239-7. Defendants object, arguing any claims involving these activities have been dismissed, leaving only the conditions of confinement claims, and thus these particular defendants are no longer parties to the lawsuit for any purpose, including discovery. *See, e.g.*, Dkt. 249-2 & Dkt. 239-5. For his part, plaintiff argues that his conditions of confinement claims are broad and encompass a "Continuous Period Beginning at Arrest" because that is when he was first detained. Dkt. 249 at 1–2. Specifically, he seeks responses to requests concerning his "pretrial detention beginning at the moment of arrest/handcuffing on May 18, 2023, and continuing through transport, booking, intake, and Plaintiff's two-day confinement at the Sauk County Jail." *Id.* at 1.

Both sides are partially right. The allegations underlying plaintiff's conditions of confinement claims all concern deprivations he allegedly suffered while detained *at the jail*. *See* Dkt. 130-1 at ¶ 51 (alleging cold temperatures, staff questioning, "chiding and belittling," a lack of privacy, of sleep due to noise and bright lights, and of nutritious food, and the denial of counsel and access to a phone). Even if the court were to look back to plaintiff's arrest, defendants correctly state that the court has dismissed plaintiff's *Monell* claims against Sauk County, Dkt. 114 at 3, his claims regarding the traffic stops and his arrest, Dkt. 157 at 9–14, and his malicious prosecution claims, Dkt. 227 at 11. Indeed, "all of Grant's claims about his

8

traffic stops, arrest and prosecution are dismissed." *Id.* The court has also dismissed his claims regarding the booking process, including the taking of fingerprints and photos, and the alleged denial of a phone call until after booking. *Id.* at 14–15. Plaintiff cannot seek reconsideration of these rulings in a motion to compel.

The court has thus significantly narrowed the scope of this case, leaving only plaintiff's "conditions-of-confinement claims about his time *at the jail*." *Id* at 11–12 (emphasis added). But that does not mean that these defendants have all been dismissed. As noted, plaintiff alleges as part of his conditions of confinement claim that he suffered questioning and harassment at the jail and that defendant Messner "mock[ed]" him there, Dkt. 130-1 at ¶¶ 48, 51, and alleges in his letter identifying the Doe defendants that defendants Messner and Krolikowski along with the newly identified defendant Bruce Bailey harassed and belittled him after he arrived at the jail on May 18, 2023, *see* Dkt. 218 at 2 (Encounter 1). Because the court has not dismissed plaintiff's conditions of confinement claims, defendants Messner, Krolikowski, and Bailey must respond to any unanswered discovery requests about this allegation to the extent they have not already done so.

## E. Plaintiff's request for sanctions, Dkt. 234 & Dkt. 239

Plaintiff also requests sanctions, but the court has no basis to impose them now. He argues that defendants have engaged in "a consistent pattern of discovery abuse" and "spoliation," as evidenced by their production of "heavily altered and edited jail videos," a "160-page document dump" of irrelevant materials, and their refusal "to provide meaningful responses" to discovery requests. Dkt. 234 at 1 & Dkt. 239 at 1–2.

Plaintiff's frustration is not entirely unjustified given, for example, the delayed notice that then-counsel of record for the newly named defendants needed to be substituted. But

defendants have not been ignoring plaintiff's discovery requests and have engaged in the meet and confer process, including by offering plaintiff the opportunity to review the original copies of the jail videos. And given that plaintiff is alleging unconstitutional conditions of confinement against multiple defendants, 160 pages of discovery does not seem an unreasonable amount of material to review. While plaintiff may think some of the documents produced as not useful, discovery under Rule 26 is broad, and discoverable information need not also be admissible. At bottom, plaintiff has failed to show prejudice as a result of any alleged delay or related discovery misconduct.

The court has now addressed plaintiff's discovery disputes, and the dispositive motion deadline is fast approaching. This case has been pending since 2023, and the amended case schedule cannot accommodate further extension of that deadline absent extraordinarily good cause, so it remains in place. The parties must work diligently to implement this order and turn their focus to the preparation of their summary judgment materials. Summary judgment motions are due by August 7, 2026 and responses are due by August 28. The deadlines below ensure plaintiff will have the ordered supplementation in advance of his deadline to respond to any motion for summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff's motions for sanctions, Dkt 234 & Dkt. 239, are DENIED.

2. Plaintiff's motions to compel, Dkt. 234, Dkt. 239 & Dkt. 249, are GRANTED in part as follows:

   a. Defendants must conduct a final search for any discoverable video evidence and disclose their findings in a verified response to plaintiff by August 14, 2026.

   b. Defendants Bailey, Horn, Papara, Schneider, Strong, and Bonham must review their responses to plaintiff's April 23, 2026 requests and submit any supplementation to plaintiff by August 14, 2026.

   c. Defendants Messner, Krolikowski, and Bailey must respond to any unanswered discovery requests about plaintiff's allegation that they mocked and harassed him after he arrived at the Sauk County Jail on May 18, 2023 by August 14, 2026.

Entered July 30, 2026.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge

11