IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CALEB JAMES GRANT,

Plaintiff,

v.

DANIEL KROLIKOWSKI, STEVEN MESSNER, ALEX BREUNIG, SAUK COUNTY, ERIK KNULL, RICHARD MEISTER, BRUCE BAILEY, JEAN BONHAM, DYLAN HORN, MICHAEL PAPARA, KRISTI SCHNEIDER, and MICHELLE STRONG,

Defendants.

OPINION and ORDER

23-cv-551-jdp

---

Plaintiff Caleb J. Grant, proceeding without counsel, alleges that defendant Sauk County Sheriff's Department staff members violated his rights in various ways after arresting him following a traffic stop. I previously granted summary judgment to defendants on Grant's claims that officers unlawfully pulled him over, searched, him, arrested him, and booked him. There is a second set of claims—mostly about the conditions of Grant's confinement in a holding cell at the Sauk County Jail for about 32 hours after his arrest—that have not yet been resolved because of delays in identifying "John and Jane Doe" defendants who worked at the jail. Grant has now named the Does and has supplemented his complaint with additional claims about his time at the jail. Both sides move for summary judgment on these claims. I will grant defendants' motion for summary judgment and I will deny Grant's motion for summary judgment because Grant fails to show that any of the defendants violated his rights during his short stay at the jail.

PRELIMINARY MATTERS

The operative complaint is a combination of Grant's amended complaint at Dkt. 130-1 and a supplement at Dkt. 218 in which he identifies the John and Jane Doe defendants and provides more detail about some of his claims. Grant moves to further amend his complaint to clarify that he means to include defendant Sergeant Erik Knull in some of the claims he brings regarding events immediately after he was brought to the jail. Dkt. 265. I will grant that motion and consider Knull as a defendant for those claims.

There are remaining issues regarding video footage of the events at the jail. Defendants produced some footage of those events but they state that some of the footage was no longer available because it was recorded over. Grant argued that the videos produced by defendants were altered and are not authentic for various reasons, including that there are time jumps, no audio, and watermarks on the videos; and that SHA-256 hashes he computed for himself were different from those that defendants listed in their production documentation. Defendants responded that they had produced all the videos they had, that their videos indeed have no audio, that they did not tamper with the videos in any way other than to add watermarks to them, and that they've offered to show Grant the original, unwatermarked versions. Magistrate Judge Anita Marie Boor denied Grant's motion for discovery sanctions and granted Grant's motion to compel in part, ordering defendants to conduct a final search for more video evidence. Dkt. 250. She otherwise left the issues of the videos' authenticity and spoliation sanctions to me. *Id.*; Dkt. 264.

Nothing in the parties' submissions suggests that there is any more video footage to produce, that the footage submitted by defendants has been tampered with, or that Grant has been prejudiced in any way. Defendants have provided plausible reasons for why the videos

they've submitted appear the way they do and might not match the hashes from the original versions, and Grant hasn't offered anything other than speculation to counter that. There's no reason to doubt the authenticity of the videos so I will consider them at summary judgment.

As for Grant's request for spoliation sanctions, such a sanction may be appropriate when the movant shows both that the opposing party knew or should have known that litigation was imminent and that the party destroyed the evidence in bad faith. *See Fitzpatrick v. Nys*, 861 F. App'x 108, 110 (7th Cir. 2021). Grant hasn't made that showing. Jail officials state that they saved all the footage they still had after they became aware of Grant's lawsuit. Not every video from the jail was saved because the system eventually overwrites video unless it is saved. Nothing in their response suggests bad faith and Grant doesn't show otherwise. Additionally, Grant simply hasn't been prejudiced. The facts are almost entirely undisputed, and in considering defendants' motion for summary judgment I will resolve disputed facts in favor of Grant's version (unless they are contradicted by the videos). He doesn't persuasively suggest how additional video evidence would help him in this case. I will deny his motion for sanctions.

I turn to the parties' motions for summary judgment.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

After plaintiff Caleb Grant's arrest on May 18, 2023, deputies took him to the Sauk County Jail. They arrived at the jail around 7:45 a.m. While Grant was in the booking area, defendants Sergeant Erik Knull, Deputy Daniel Krolikowski, and Deputy Steven Messner harassed Grant by calling him a sovereign citizen, calling his opinions about driving without a license "bullshit," and stating, "I bet your Mom is proud of you." Dkt. 261, ¶ 18. Grant

wouldn't answer their questions about his identity. They mockingly asked him what color his shirt was, to which he responded. They then said, "Oh look, he finally answered a question." *Id.* Messner, wearing street clothes, took a photo of Grant using what appeared to be his personal phone.

Grant refused to answer booking questions. Defendant deputies Bruce Bailey and Dylan Horn told him that he would remain in a solo holding cell until he cooperated with the booking questions. Grant remained in that cell until the afternoon the next day. That cell had been vacated earlier that morning; Bailey spent about four minutes cleaning the cell with cleaning solution, a rag, a broom, and a mop before Grant was placed in it. Video of the sink and toilet from that cell is partially obscured by an oval sticker placed on the camera to provide privacy for detainees using the toilet. The video shows Bailey wiping down the sink but does not show whether he wiped the faucet or faucet controls. *See* Dkt. 252-1 (file named in part "02_30_33") at 44:00–44:30 (placeholder docket entry for video footage). Grant states, and photos confirm, that the faucet had "visible hard-water buildup." *See* Dkt. 257-4, at 3–5.

Grant was issued underwear, sandals, an orange shirt, and orange pants. He was not issued socks. While Grant was in the holding cell, he was not given chance to shower, did not receive soap or a towel, and wasn't allowed to use the phone. Defendants told him that he wouldn't get these things until he agreed to complete booking.

Grant ate lunch and dinner on May 18 and lunch on May 19. A breakfast tray was served to him at 4:15 a.m. May 19, but Grant was asleep, and he didn't eat that meal before the tray was taken away. Defendant Deputy Michael Papara took Grant's drinking cup out of his cell; he was allowed to have it back only during mealtimes. I take Grant to be saying that

he couldn't drink out of the drinking-fountain nozzle in his cell because he believed it to be dirty. It is unclear whether Grant received utensils at mealtimes.

During his stay in the cell, including overnight, the lights were never dimmed or turned off. Grant states that there were loud noises during day and night, waking him. Grant wasn't initially given a blanket. At about 8:00 p.m., he asked for a blanket and was given one.

Grant completed booking around 7:00 a.m. on May 19. He was then given a drinking cup and utensils.

Grant states that sometime that morning, he told defendant Deputy Kristi Schneider that he had a severe headache and needed Tylenol or coffee. He states that Schneider said that she would check with medical staff, but she did not return with medicine, coffee, or any other medical follow-up.

At about 2:30 p.m. Grant appeared at a bail hearing from an attorney booth at the jail. He was represented by a public defender whom he did not agree to represent him. After the hearing, Grant was returned to the holding cell, and he was then released from the jail around 3:40 p.m. Grant possessed cash when he was arrested. Defendant Deputy Jean Bonham transferred that amount onto a prepaid Mastercard. Defendant Deputy Michelle Strong gave Grant the card for that amount instead of giving him cash when he left the jail.

I will address additional facts as they become relevant to the analysis.

## ANALYSIS

Grant brings constitutional claims against the individual defendants and against Sauk County itself about various aspects of his treatment at the jail.

**A. Initial booking attempt**

Grant contends that defendants violated his rights during their initial attempt to book Grant, who refused to identify himself. In a previous order, I granted defendants summary judgment on some of these claims, including his claims about being fingerprinted and photographed without his consent, and being barred from making a phone call until after his booking. Dkt. 157, at 14–15.

After amending his complaint in conjunction with identifying the John Doe defendants, Dkt. 218, Grant brings more claims about his initial treatment at the jail. He contends that after he refused the booking process, defendants coerced his booking by placing him in a cell with unconstitutional conditions of confinement. I'll address the conditions of confinement below. But Grant wasn't unlawfully "coerced" into being booked: defendants were justified in detaining him pending completion of the booking process, which he had refused. *See, e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 54 (1991). I will grant summary judgment to defendants on that claim.

Grant alleges that defendants harassed him by calling him a "sovereign citizen," sarcastically stating that his mother would be proud of him, and mocking his refusal to answer their questions by stating that he finally answered a question when they asked him what color his shirt was. None of these allegations support a constitutional claim. Even if some of defendants' comments weren't professional, "simple verbal harassment" doesn't violate the Constitution. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Grant calls these comments "belittling" but nothing in his sparse proposed findings of fact suggests that defendants' comments went beyond the type of simple harassment considered in *DeWalt*.

Grant states that these conversations happened without counsel present. If he is attempting to bring a Fifth Amendment claim about those conversations, these types of allegations support a constitutional claim only when the suspect's statements are used against him in a criminal case. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1024 (7th Cir. 2006) (citing *Chavez v. Martinez*, 538 U.S. 760, 778 (2003)). Grant doesn't present any evidence suggesting that he said anything incriminating to defendants, nor does he state that any of his statements were used against him in subsequent criminal proceedings. So Grant can't maintain a claim under this theory.

Grant states that in addition to his formal booking photographs, defendant Messner took a photograph of him with Messner's phone, which had no legitimate booking purpose. But this claim isn't present in Grant's operative complaint, Dkt. 130-1, or in his supplement to the complaint, Dkt. 218. Grant can't amend his complaint by raising a new claim in his summary judgment materials. I will disregard his arguments about this proposed claim.

**B. Conditions of confinement claims**

Grant brings a host of claims regarding the conditions of his confinement during his 32-hour stint at the jail: he was subjected to a dirty cell with cold temperatures and no blanket; he suffered a lack of sleep caused by a constantly illuminated cell and noise, he wasn't given adequate food, enough drinking water, soap, or a shower; he wasn't given aid after he complained of a headache; and he was videorecorded while on the toilet.

Both sides frame many of these claims as falling under the Due Process Clause of the Fourteenth Amendment. But because almost all the events here concern Grant's treatment after his arrest but before a judicial determination of probable cause, those claims fall under the Fourth Amendment. *See e.g.*, *Pulera v. Sarzant*, 966 F.3d 540, 549 (7th Cir. 2020). This

ultimately matters little because the standards are "effectively the same" under either amendment: whether a government official's actions were "objectively unreasonable under the circumstances." *Id.* (internal quotations omitted); *see also Raddant v. Douglas Cnty.*, 170 F.4th 583, 590 (7th Cir. 2026) ("'Whatever the source of law . . . a court must determine whether the force was objectively unreasonable.'" (quoting *Lombardo v. City of St. Louis,* 594 U.S. 464, 467 n.2 (2021)).

The Court of Appeals for the Seventh Circuit has not yet clearly articulated the standard to be applied regarding the conditions of a detainee's confinement. *In Pittman by & through Hamilton v. Madison County, Illinois*, 108 F.4th 561, 564, 569 (7th Cir. 2024), the court resolved "tension, if not inconsistency, in our case law" regarding these types of claims by setting forth the following elements: (1) the defendant engaged in intentional conduct or made an intentional decision about the conditions of the plaintiff's confinement, and (2) the defendant's conduct or decision was objectively unreasonable under the circumstances. As for his claims against Sauk County, under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978), a municipality can be liable for an alleged constitutional violation if it resulted from a county policy, widespread practice, or decision by a final policymaker. But if there is no underlying constitutional violation, the county cannot be liable under *Monell*. *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021).

That still leaves the question of how serious a deprivation must be before it violates the Constitution. The Eighth Amendment prohibits cruel and unusual punishment. But plaintiffs like Grant cannot be "punished" at all because they haven't been convicted yet. *Cf. Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). Even so, not

every unreasonable decision by jail officials—no matter how minor—violates the Constitution. *See, e.g.*, *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) ("A single clogged toilet does not violate the Constitution, and prisoners are not entitled to Fiji Water on demand.").

I have previously concluded the same "seriousness of the deprivation" analysis should apply regardless whether the plaintiff brings an Eighth Amendment or Fourteenth Amendment claim. *Est. of Nottestad by Clark v. La Crosse Cnty.*, No. 21-cv-535-jdp, 2022 WL 17583798, at *5 (W.D. Wis. Dec. 12, 2022) (collecting cases in which the Seventh Circuit imported Eighth Amendment standards into Fourteenth Amendment cases). So for a traditional conditions-of-confinement claim, that means that the question is whether the "severity and the duration of the conditions were so significant that they either deprived [Grant] of the minimal civilized measure of life's necessities or subjected [him] to a substantial risk of serious harm." *Id.* I will follow the same approach here. But even if some lower standard for the seriousness of the deprivation should apply instead, Grant's claims still fall short because he alleges only temporary minor inconveniences that do not amount to a constitutional violation.

For instance, Grant alleges that he was deprived "nutritional food," but the summary judgment record shows that he was served four meals in his 32-hour stay. Grant states that he was "shorted" breakfast on the second day because it was served to him at 4:15 a.m., while he was asleep, and then taken away before he awoke. But regardless the reasonableness of defendants' actions in serving a meal at such an early hour, the loss of a single meal isn't serious enough of a deprivation to violate the Constitution. *See, e.g., Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (no constitutional violation where prisoner occasionally missed breakfast). He otherwise alleges that the food was poor or not nutritious, but he doesn't support those allegations in his summary judgment materials. Summary judgment is the "put

up or shut up" moment at which the non-moving party must demonstrate that it has evidence that requires a trial. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). Grant fails to present evidence that could lead a reasonable jury to conclude that he was deprived of adequate food. Grant also states that he was deprived of utensils for part of the time, but "eating unappetizing food with one's hands . . . . describe[s] a temporary inconvenience[], not [an] extreme deprivation." *Stanley v. Page*, 44 F. App'x 13, 15 (7th Cir. 2002). Defendants are entitled to summary judgment on this claim.

Grant alleges that at mid-day of his first day, defendant Papara removed his drinking cup and returned it only at mealtimes, forcing him to use a "dirty" water spigot otherwise. As a starting point, receiving beverages only at mealtimes does not violate the Constitution. *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) ("we do not believe that requiring [pretrial detainee] to . . . receive beverages only with meals . . . rises to the level of severity necessary to state a constitutional violation."). Moreover, Grant doesn't explain what he means by the water spigot being dirty, other than to state that it had "hard-water buildup," Dkt. 273, at 11, which simply isn't a serious enough issue to violate the Constitution. Even if Grant means something else, he hasn't shown that in taking the cup away, a reasonable officer in Papara's position would have known that it created a problem for Grant; Grant does not state that he told Papara or anyone else about the dirty spigot. Nor has Grant provided evidence suggesting that the dirty spigot was caused by a policy or practice of the county regarding a *Monell* claim. Defendants are entitled to summary judgment on this claim.

Similarly, Grant alleges that he was placed in a "filthy cell." Dkt. 218, at 2. This case was not subject to the court's usual complaint-screening procedures because Grant wasn't a prisoner when he filed the lawsuit and because fully prepaid the filing fee.

*See* 28 U.S.C. §§ 1915 and 1915A. Had I screened the complaint, I wouldn't have allowed him to proceed on a claim because a mere allegation of a filthy cell wasn't enough to give defendants notice of his claim. In any event, at summary judgment, Grant provides no evidence supporting this claim, and there is video evidence of staff cleaning the cell before he arrived. Thus he comes nowhere close to showing that the county or individual defendants violated his rights, particularly given the short time that he spent in the cell. *See, e.g.*, *Sullivan v. Lake Cnty. Jail*, No. 2:22-CV-191, 2022 WL 15481043, at *1 (N.D. Ind. Oct. 27, 2022) (cell toilet covered in urine and feces for one night, although "unpleasant and inconvenient," did not amount to a Fourteenth Amendment violation).

Grant alleges that his cell was cold and that he was given a blanket only 12 hours into his detention, after he asked for one. As with his other allegations, Grant provides very little evidence supporting this claim. He states that he wasn't given socks, that he was "freezing" during those 12 hours, and that the blanket that he was given wasn't as nice as the one given to the inmate who occupied the cell before him. He hasn't provided sufficient evidence to suggest that the ambient temperature of the cell violated constitutional standards, nor does he suggest that reasonable officers in defendants' position would have known that the temperature was a problem. *See Jones v. Van Lanen*, 27 F.4th 1280, 1286 (7th Cir. 2022) (non-movant not entitled to inference "that veers too far into speculation"). And staff gave Grant a blanket when he asked for one, which was a reasonable response. He has no constitutional right to have the same quality blanket as another inmate. I will grant summary judgment to defendants on this claim.

Grant alleges that he had difficulty sleeping because the lights were kept on his cell all night and there were loud noises during his stay. It's undisputed that jail staff kept the light on

in his cell all night. Grant provides almost no evidence about the noise component of this claim, such as how loud or how frequent the noises were, so the noise component adds nothing to the claim. *See e.g.*, *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (few hours of periodic loud noises over intercom not serious enough to violate Constitution). As for the constant illumination, a prolonged exposure to that condition could violate the Constitution. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment."); *Dvorak v. Racine Cnty. Jail Sheriff*, No. 07-C-181, 2007 WL 1217693, at *6 (E.D. Wis. Apr. 23, 2007) ("An environment of constant illumination may violate the Eighth Amendment if it causes sleep deprivation or leads to other serious physical or mental health problems."). But here, Grant suffered only one night of broken sleep (for instance, he concedes that he slept through breakfast at 4:15 a.m.). The undisputed facts here show only a short-term inconvenience to Grant, not a constitutional violation. *See Tesch*, 157 F.3d at 476 ("Though it is possible that these impositions may rise to the level of a constitutional violation if they lasted for six months or a year, it is not unreasonable for a pretrial detainee to expect to experience a short-term imposition on a basic human necessity."). I will grant summary judgment to defendants on this claim.

Grant alleges that he wasn't given soap or a shower. But he was in the jail for only 32 hours. His constitutional right to a certain level of hygiene wasn't violated by such a short-term deprivation. *See Jones v. Anderson*, 116 F.4th 669, 679 (7th Cir. 2024) ("A short-term deprivation of hygienic products, even one that causes considerable discomfort or unpleasantness, does not raise a constitutional concern."); *Davenport v. DeRobertis*, 844 F.2d

1310, 1316 (7th Cir. 1988) (no support in caselaw for proposition that inmates are entitled to three showers a week).

Grant alleges that he was videorecorded using the toilet. It's undisputed that there was a video camera recording Grant in his cell. "Although detainees do not relinquish all bodily rights to privacy as soon as they are placed in jail cells, those privacy rights are substantially diminished." *Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1216 (7th Cir. 2023). Prisoners generally do not have a reasonable expectation of privacy in using the toilet. *See, e.g.*, *Henry v. Hulett*, 969 F.3d 769, 774 (7th Cir. 2020); *Lazur v. Lake Cnty. Sheriff*, No. 2:24-cv-309, 2025 WL 985462, at *3 (N.D. Ind. Apr. 2, 2025) ("the lack of privacy while using the toilet is an unfortunate reality of detention and not a constitutional violation"). And defendants explain that they took steps to remediate the issue: they placed an oval sticker over the camera, thus obscuring the area of the toilet in the video footage. Video and screenshot evidence show that the sticker was effective. For instance, defendants provide a screenshot of Grant standing while urinating: only Grant's head and clothed torso are visible. Dkt. 257-10, at 11. Based on this evidence, no reasonable jury could conclude that defendants violated Grant's right to privacy.

Grant alleges that he awoke on May 19 with a headache induced by not having caffeine; he states that he asked defendant Schneider for coffee or Tylenol but she gave him neither. To prevail on a Fourth Amendment medical care claim, Grant would need to show that he had a "serious medical need" that defendants treated unreasonably. *Cf. Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (Fourteenth Amendment case). But common ailments such as headaches are generally insufficient to reach the level of an objectively serious medical need. *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Willis v. Pfister*, No. 18-CV-333, 2024 WL 216672, at *9–10 (N.D. Ill. Jan. 19, 2024). Nothing in the caselaw suggests that a

several-hour span with a simple caffeine-withdrawal headache is severe enough to qualify as a serious medical need. Thus defendants are entitled to summary judgment on this claim.

**C. Other claims**

Grant attempts to being a constitutional claim about defendants Strong and Bonham failing to return the cash that he had been arrested with; rather they issued him a prepaid Mastercard in the same amount. But money is fungible and Grant doesn't explain how he was harmed by these actions other than to state that the card "is subject to the issuer's terms and fees." Dkt. 267, ¶ 79. He doesn't explain what those terms or fees were or whether they at some point contributed to him losing some of the funds. To succeed on a constitutional claim for damages, Grant must show that he was harmed by defendants' actions. Grant's vague allusion to fees associated with the prepaid card isn't enough to show that he was actually harmed. So I will grant summary judgment to defendants on this claim.

Grant also continues to press a right-to-counsel claim, contending that defendants denied all of his requests to telephone outside counsel until the booking process was completed, thus leaving him to be represented by a public defender he didn't want. But I already addressed this claim in my previous summary judgment order, stating that the Sixth Amendment right to counsel doesn't attach until the initiation of judicial criminal proceedings, *Kirby v. Illinois*, 406 U.S. 682, 689 (1972), and pretrial detainees have no freestanding Sixth Amendment right to use the phone, *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1145 (7th Cir. 1983). Grant states that defendant Papara "forced a public defender on [him]," Dkt. 261, ¶ 31, but he doesn't provide any explanation of what he means by this other than the deprivation of phone calls that I've already determined cannot support a claim. Without any other evidence to

support this conclusory statement, no reasonable jury could conclude that Papara violated Grant's rights. So I will grant summary judgment to defendants on this claim.

Because I am granting summary judgment to defendants on all of Grant's remaining claims, I will deny Grant's own motion for summary judgment and I will dismiss the case in its entirety.

## ORDER

IT IS ORDERED that:

1. Plaintiff's motion for leave to amend his complaint, Dkt. 265, is GRANTED.
2. Plaintiff's motion for spoliation sanctions, Dkt. 234, is DENIED.
3. Defendants' motion for summary judgment, Dkt. 253, is GRANTED.
4. Plaintiff's motion for summary judgment, Dkt. 258, is DENIED.
5. The clerk of court is directed to enter judgment accordingly and close the case.

Entered October 22, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge